## 36114. HEAD v. THE STATE.

HILL, Justice.

The defendant appeals his conviction on 2 counts of vehicular homicide, urging 33 enumerations of error. We affirm.

The jury was authorized to find that defendant finished work at Owens-Corning Fiberglas on McLarin Road in Fulton County at 4:30 p.m. September 8, 1977, and went to a nearby bar to cash his paycheck and drink beer with several of his co-workers. (The state contended that the defendant had gone directly to the bar from work and drank several beers during the time he was there, but defendant contended that he had arrived at the bar at 6:30 or 6:45 p.m. and had only two beers and a hotdog.) The defendant left the bar shortly before 8:00 p.m. and drove his Plymouth Barracuda north on McLarin Road. It was not yet dark. He drove over a railroad siding on which a train was sitting a short distance from the Owens-Corning Fiberglas plant. As defendant approached the driveway from the employee parking lot, a Toyota automobile driven by Ruby Huggins was attempting to turn left heading south onto McLarin Road from the parking lot. The defendant drove into the side of the Toyota. The impact knocked the Toyota 85 feet, killing the driver and one of the three passengers in the car. Defendant had several ribs broken but was not permanently injured. A police officer at the scene testified that the defendant was uncooperative and had slurred speech and a

strong odor of alcohol.

The defendant was indicted on two counts of vehicular homicide for speeding, reckless driving and driving under the influence of alcohol.

At trial, a blood alcohol expert testified that tests taken of defendant approximately 2 hours after the accident showed his blood alcohol level to be .10 grams percent.[1] He testified that, after the last drink, a person's blood alcohol level will continue to rise for forty-five minutes to an hour and a half, usually about an hour, will peak for ten to twenty minutes, and will then begin to decline, and that blood taken 2 hours after the last drink will be on the downward side. He testified further that it would require a minimum of three or four 12-ounce beers in an hour to attain a blood alcohol level of .10 grams percent.

A directed verdict of acquittal was granted on the issue of speeding, and the two counts of vehicular homicide were submitted to the jury on the remaining grounds. The jury found the defendant guilty of both counts of vehicular homicide. He was sentenced to 5 years with 3 to serve on one count and 5 years on probation to run consecutively with the other sentence on the second count.

The defendant appeals with 33 enumerations of error, including 6 constitutional challenges to Georgia's traffic regulations.

1. A review of the transcript in this case in the light most favorable to the jury's verdict shows that a rational fact finder could have found petitioner guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant alleges that "The Uniform Rules of the Road Act," Ga. L. 1974, p. 633, as amended by Ga. L. 1976, p. 977 (Code Title 68A), violates the Georgia Constitution by containing matter different from what is expressed in the title. Ga. Const. Art. III, Sec. VII, Par. IV (Code Ann. § 2-1304). Specifically, the defendant contends that provisions defining the crime of homicide by vehicle and prescribing chemical tests for measuring a driver's use of drugs or alcohol are different from the subject expressed in the title. We find no merit in this enumeration of error.

"The Uniform Rules of the Road Act," Ga. Laws 1974, p. 633, is captioned as follows: "An act to revise, classify, consolidate, and

---

[1]Code Ann. § 68A-902.1 provides that a person with .05 percent or less by weight of alcohol in the blood is presumed free of influence, that levels above .05 and under .10 may be considered by the fact finder but attach no presumption, but that a person is presumed under the influence of alcohol if there is .10 percent or more by weight of alcohol in the person's blood.

modernize present laws relating to the rules of the road for traffic and to establish new laws relating thereto; . . . to provide miscellaneous rules . . . and for other purposes." The subsequent amendment of the provision defining homicide by vehicle, Ga. Laws 1976, p. 977, Code Ann. § 68A-903, is captioned as follows: "An act to amend Code section 68A-903, relating to homicide by a vehicle, so as to redefine the offense of homicide by a vehicle in the first degree; to redefine the offense of homicide by a vehicle in the second degree; to repeal conflicting laws; and for other purposes."

The crime of homicide by vehicle was specifically brought into the caption by the 1976 amendment to the act. The use of chemical tests to measure drug and alcohol use, though not specifically mentioned in the caption of the 1974 act, is clearly germane to the general subject matter embraced in the title to the act and is designed to carry into effect the purposes for which it was passed. *State of Ga. v. Resolute Ins. Co.,* 221 Ga. 815, 817 (147 SE2d 433) (1966), and citations therein.

3. The defendant alleges that "The Uniform Rules of the Road Act," Ga. L. 1974, p. 633-99, as amended by Ga. L. 1976, p. 977 (Code Title § 68A), violates due process by failing to require distributors of alcoholic beverages to label their products so as to put the consumer on notice as to what quantity of the beverage is required in a given time period to raise the level of alcohol to that prohibited by law. We find no merit in this enumeration of error.

Code Ann. § 68A-902 (Ga. L. 1974, p. 671) provides that "(a) A person shall not drive or be in actual physical control of any moving vehicle while: (1) Under the influence of alcohol. . . ." Code Ann. § 68A-903(a) (Ga. L. 1976, p. 977) provides that "Whoever shall, without malice aforethought, cause the death of another person through the violation of section 68A-901 [reckless driving], section 68A-902 [supra] . . . shall be guilty of homicide by vehicle in the first degree." The notice that driving under the influence of alcohol is a crime is adequate. Code Ann. § 68A-902.1, supra (fn. 1), is evidentiary in nature rather than substantive.

4. The defendant contends that Code Ann. § 68A-903, supra, prescribing the offense of "homicide by vehicle" unconstitutionally punishes the consequences of an act rather than the intent which caused it, and is arbitrary in that at the time of this collision in 1977 there was no crime punishing serious physical injury. (In 1979 the General Assembly declared it to be a crime to commit "serious injury by vehicle." Ga. L. 1979, p. 768.) We find no merit in these enumerations of error. See *State v. Edwards,* 236 Ga. 104 (222 SE2d 385) (1976). Prior to Ga. L. 1979, p. 768, supra, reckless driving and driving under the influence of alcohol were crimes in and of

themselves applicable where no death resulted. The intent to commit a criminal act will sustain a conviction and the state may fix the punishment based on the result of that criminal act. Compare Code § 26-1103, Involuntary Manslaughter. *State v. Edwards,* supra.

5. The defendant contends that the trial court erred in overruling his demurrer to the indictment and his motion to suppress the blood test results on grounds that Code Ann. § 68A-902.1 unconstitutionally discriminates against alcohol users in favor of those who use drugs. Specifically, the defendant contends the statute unconstitutionally discriminates against alcohol users in two ways: (1) by setting levels at which alcohol impairment is presumed while setting no such standard for drug users and (2) by requiring that only a physician, registered nurse or other qualified person withdraw blood for blood alcohol tests made on request of a law enforcement official but setting no such requirement for drug users. Defendant cites no authority for his position other than the constitutional guarantees of due process and equal protection. The legislature is authorized to classify and treat alcohol differently from other drugs and defendant cannot complain if drug users are not entitled to have qualified persons conduct the tests. We find no merit in these enumerations of error.

6. Defendant contends that Code Ann. § 68A-903 is unconstitutional because it makes no provision for special verdicts when homicide by vehicle in the first degree (reckless driving, driving under the influence, and fleeing or attempting to elude an officer) is charged as well as homicide in the second degree (violation of other traffic offenses) as part of one count in the indictment. The defendant in this case was originally charged with two counts of vehicular homicide with each count predicated on two first degree violations (reckless driving and driving under the influence) and a second degree violation (speeding). During the trial, the court directed a verdict of acquittal on the issue of speeding, the second degree violation, and thus removed that issue from this case. Any problem created by the foregoing combination of offenses undoubtedly would have been removed by the charge of the court and jury verdict but, because the speeding issue did not reach that point, any misjoinder constituted harmless error. It was not reversible error in this case to overrule the defendant's special demurrer to the indictment.

7. Defendant contends that the trial court erred in allowing the state to put his character in issue contrary to *Bacon v. State,* 209 Ga. 261 (71 SE2d 615) (1952). The defendant alleges that the state improperly placed his character in issue by questioning police officer Sweeney about finding defendant in a car slumped over the steering

wheel obviously drunk at a service station near the scene of the accident in the early morning a few weeks after the accident.

This court in *Bacon v. State,* supra at 262, applying Code § 38-202, stated that "It is a fundamental principle in our system of jurisprudence, intended to protect the individual . . . that the general character of the defendant and his conduct in other transactions is irrelevant unless the defendant chooses to put his character in issue."

In *French v. State,* 237 Ga. 620 (229 SE2d 410) (1976), this court interpreted *Bacon,* supra, to require the satisfaction of two conditions before evidence of an independent crime is admissible: (1) evidence that the defendant was in fact the perpetrator of the independent crime, and (2) sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. The court in *Hamilton v. State,* 239 Ga. 72, 75 (235 SE2d 515) (1977), noted that "Once the identity of the accused as the perpetrator of the offense separate and distinct from the one for which he is on trial has been proven, testimony concerning the independent crime may be admitted for the purpose of showing identity, motive, plan, scheme, bent of mind, and course of conduct." The testimony concerning the second occurrence was admissible to show the defendant's bent of mind and course of conduct.

8. The defendant contends that the state improperly included facts not in evidence in its hypothetical question to the blood-alcohol expert. Specifically, the defendant challenges the state's hypothetical question concerning the effect of consuming 6 or 7 beers between 4:30 and 7:45 p.m. when the only evidence showed the defendant arrived at the bar at 6:30 and the defendant admitted having had only 1 or 2 beers. The state conceded it had no evidence as to the hypothetical facts that the defendant had 6 or 7 beers. The overruling of the objection to this question was error. *Kuttner v. Swanson,* 59 Ga. App. 818, 824 (2 SE2d 230) (1939); 11 EGL 319, Evidence-Civil, § 20. However, in view of the expert's answer to the hypothetical question that at 8:10 p.m., the blood alcohol level would be between .10 and .11, the error was harmless. The expert had previously testified that all readings between .10 and .11 were rounded down to .10, that two hours after the last drink the alcohol level would be declining and that it would require at least 3 or 4 beers consumed in an hour to attain .10.

9. The defendant contends the trial court erred in allowing two witnesses to testify about the speed at which defendant's car was traveling at the time of the wreck without laying a foundation to show the witnesses had facts upon which they based their opinion. One witness testified that the Toyota was knocked a distance of 85 feet

and that although he did not see the defendant's Barracuda before impact, based on the distance and damage he estimated the defendant's speed to be 60 m.p.h. or more. The second witness testified that the defendant's vehicle was "going pretty fast." The trial court directed a verdict of acquittal on the charges that the defendant had committed vehicular homicide by speeding. Defendant nevertheless contends the evidence as to speed was harmful because it was allowed to remain in the case as to the issue of reckless driving. The conclusory testimony of the second witness was confirmed by the physical evidence and its admission clearly was harmless error. The first witness was not qualified as an expert in accident reconstruction and the admission of his opinion as to the speed of the defendant's vehicle was error. However, in view of the directed verdict of acquittal on the speeding issue, we find it highly probable that the admission of his testimony was harmless under the evidence in this case. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

10. The defendant contends that the court erred in failing to instruct the jury, without request, as to the effect of a breach of the rule of sequestration. The rule was broken when a police officer who had testified for the state discussed the case with the assistant district attorney and two other police officers (one of whom had testified and the other of whom was not called as a witness) between the time he gave his original testimony and the time he was recalled to the witness stand. Code § 38-1703. The violation of the rule occurred on the morning of April 26, 1979, and was discovered when the first witness was called that day. Closing arguments began the next morning. No timely request to charge was made. Code Ann. § 70-207(b). The trial court did not commit reversible error in refusing defendant's oral request to charge made for the first time after the jury was instructed.

11. Defendant contends the trial court erroneously admitted into evidence three improperly authenticated documents. To impeach the defendant's testimony that he left his employment at Owens-Corning voluntarily, the state called the accounting supervisor for Owens-Corning to show that the defendant was fired. He presented three pieces of documentary evidence (separation notice, employee work record, change of status report) which showed that the defendant was terminated for absenteeism. The accounting supervisor testified that these records were made and kept in the regular course of business of the personnel department and that it was the regular course of business to make such records at the time of the act, transaction or occurrence. The defendant contends that the accounting supervisor did not maintain these personnel records, had

no control over the employees in the personnel department who maintained them and was not qualified to testify about them. The accounting supervisor was not incompetent to testify as to the practices as to the records of the company, he did so, and the documents were admissible under the business records act. Code Ann. § 38-711.

The defendant further alleges that the separation notice was altered by adding the cause of separation (absenteeism). Since the properly admitted employee work record plus the change of status report showed that the defendant was terminated for accumulation of points for absenteeism, we find the admission of the separation notice to be harmless error.

12. Defendant contends the court erred in charging the jury. After reviewing the charge, we find no merit in these enumerations of error.

*Judgment affirmed. All the Justices concur.*

SUBMITTED APRIL 4, 1980 — DECIDED SEPTEMBER 5, 1980 — REHEARING DENIED SEPTEMBER 23, 1980.

*Paul S. Weiner,* for appellant.

*Lewis R. Slaton, District Attorney, Dean Davis, Benjamin H. Oehlert, III, Assistant District Attorneys,* for appellee.

*Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Staff Assistant Attorney General,* amicus curiae.